**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.**

KATHRYN WILES,

  Plaintiff,
v.

SYNCHRONY BANK,

  Defendant.
_____/

## COMPLAINT

Plaintiff Kathryn Wiles ("Plaintiff") files this Complaint against Defendant Synchrony Bank ("Defendant" or "Synchrony") and alleges as follows:

## NATURE OF ACTION

1. Defendant violated the Telephone Consumer Protection Act and the Florida Consumer Collections Practices Act by placing more than 200 phone calls to Plaintiff's cellular phone using an automatic telephone dialing system or pre-recorded or artificial voice.

2. Plaintiff alleges a violation of her fundamental rights under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Defendant used an automatic telephone dialing system or pre-recorded or artificial voice to repeatedly call Plaintiff's cellular phone, which is a per se violation of the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

3. Plaintiff also alleges violations of the Florida Consumer Collection Practices Act ("FCCPA"). *See* Fla. Stat. §§ 559.55-559.785.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331, 47 U.S.C. §227, and pursuant

to 28 U.S.C. § 1367 for pendent state law claims. Venue in this District is proper because Plaintiff resides here and Defendant placed telephone calls to Plaintiff in this District.

## PARTIES

5. Plaintiff Kathryn Wiles is a natural person and citizen of the State of Florida, and a resident of Manatee County, Florida.

6. Defendant Synchrony Bank a national banking association with its principal place of business located in Utah.

## FACTUAL ALLEGATIONS

7. On December 20, 1991, Congress enacted the TCPA to govern and restrict telemarketing activities conducted via phone and facsimile. Congress passed the Act based, in part, on the following findings:

(a) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

(b) Over 30,000 businesses actively telemarket goods and services to business and residential customers.

(c) More than 300,000 solicitors call more than 18,000,000 Americans every day.

(d) Total United States sales generated through telemarketing amounted to $435,000,000,000 in 1990, a more than four-fold increase since 1984.

(e) Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(f) Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.

(g) The U.S. Constitution does not prohibit restrictions on commercial telemarketing solicitations.

(h) Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

(i)     Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

(j)     Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

(k)     Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

(l)     Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

Section 2 of Pub. L. 102-243 (Congressional Statement of Findings).

8.     As explained by The United States Supreme Court:

"Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Ibid.* (internal quotation marks omitted). "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy."

*Mims v. Arrow Financial Services, LLC*, 132 Sup. Ct. 740, 745 (2012)(citations omitted).

9.     Plaintiff signed up for a TJ Maxx Credit Card, which was financed through Synchrony.

10.    Plaintiff was unable to make her monthly payments. As a result, Synchrony began incessantly calling Plaintiff's cellular phone, using an automatic telephone dialing system or pre-recorded or artificial voice.

11.    On or about August 31, 2016, Plaintiff plainly and unequivocally told Synchrony to stop calling her cellular phone. Following this conversation, Plaintiff did not further consent

to any additional phone calls to her cellphone.

12. Despite Plaintiff's request for Synchrony to stop harassing her with cellular phone calls, Synchrony continued to initiate calls to Plaintiff's cellular phone using an automatic dialer.

13. By way of example, Synchrony continued to call Plaintiff on her cellular phone approximately 203 times between September 1, 2016 and October 20, 2016.

14. On each occasion when Defendant called Plaintiff, upon answering the phone, Plaintiff heard a voice recording from an artificial or pre-recorded voice, and after a pause, a live person would ask for her by name.

15. The presence of an artificial or pre-recorded voice, followed by a pause and then the appearance of a live operator, evidenced that Synchrony initiated the calls using an automatic telephone dialing system or a pre-recorded or artificial voice.

16. Defendant's initiation of these phone calls to Plaintiff, using an automatic telephone dialing system or a pre-recorded or artificial voice, is a per se violation of the TCPA.

17. Defendant's continued calling of Plaintiff's cellular phone after being specifically instructed to stop was a willful and/or knowing violation of the TCPA.

18. None of Defendants' telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C § 227 (b)(1)(A).

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

19. Plaintiff repeats the allegations set forth in paragraphs 1 through 18 above as if fully restated herein.

20. Defendant, or others acting at its request, placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice in violation of 47 U.S.C § 227 (b)(1)(A)(iii).

21. Defendant knowingly and intentionally violated the TCPA by placing phone calls to Plaintiff's cellular phone using an automatic telephone dialing system or pre-recorded or artificial voice after being instructed to stop.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant for:

a. Damages;

b. A declaration that Defendant's calls violate the TCPA;

c. A permanent injunction prohibiting Defendant from placing non-emergency calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice; and

d. Such other or further relief as the Court deems proper.

## COUNT II – VIOLATION OF FCCPA

22. Plaintiff repeats the allegations set forth in paragraphs 1 through 18 above as if fully restated herein.

23. This is an action for damages for violation of the FCCPA. Fla. Stat. §§ 559.55-559.785.

24. Defendant's actions constitute harassment and abuse of the Plaintiff given the amount of communications with Plaintiff after she told the caller to specifically stop calling. Fla. Stat. § 559.72(7).

25. Plaintiff has retained the undersigned counsel for the purposes of pursuing this matter against Defendant and is obligated to pay said counsel a reasonable fee for their services. The FCCPA provides for an award of attorney's fees should Plaintiff prevail in this matter. Fla. Stat. § 559.77(2).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of the Plaintiff and against Defendant for damages, attorney's fees, litigation expenses and costs of suit, and such other relief or further relief as the Court deems proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable as a matter of right.

Dated: March 2, 2017.

        Respectfully submitted,

        **WITES & KAPETAN, P.A.**
        Attorneys for Plaintiff
        4400 North Federal Highway
        Lighthouse Point, FL  33064
        954-570-8989
        954-354-0205 (fax)

        By: */s/ Thomas B. Rogers*
            MARC A. WITES
            Fla. Bar No.: 24783
            mwites@wklawyers.com
            THOMAS B. ROGERS
            Fla. Bar No. 54680
            trogers@wklawyers.com